IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RHONDA MIDDLETON                                                                        PLAINTIFF

v.                         Civil No. 12-3029

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Rhonda Middleton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her application for SSI on April 21, 2009, alleging an onset date of January 1, 2002,[2] due to bipolar disorder, post traumatic stress disorder ("PTSD"), anxiety attacks, suicidal thoughts, depression, and arthritis. Tr. 180-186, 204, 222, 223-224, 234, 249, 272-274, 283-284, 287. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 110, 116. An administrative hearing was held on May 24, 2011. Tr. 32-86. Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. *See* 20 C.F.R. § 416.335; *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991). Therefore, plaintiff must prove that her disability commenced on or after April 21, 20009, and continued through May 5, 2010, the date of the ALJ's decision.

At the time of the hearing, Plaintiff was 50 years old and possessed an eighth grade education. Tr. 37-38. She had past relevant work "(PRW)" experience as a nursing assistant. Tr. 38, 205, 255-259.

On May 5, 2010, the ALJ found Plaintiff's rheumatoid arthritis by history, arthralgias, hepatitis C, borderline intellectual functioning ("BIF"), bipolar disorder, adjustment disorder with depressed mood, panic disorder with agoraphobia, PTSD, antisocial personality disorder, and polysubstance abuse/dependence in reported remission were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(a) except she can only occasionally climb, balance, stoop, kneel, crouch, and crawl and must avoid concentrated exposure to hazards including no driving as a part of her work. In addition, she can perform work where interpersonal contact is limited to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct and concrete.

Tr. 15-16. With the assistance of a vocational expert, the ALJ then concluded that Plaintiff could perform work as a bench assembler, laundry worker, and patcher. Tr. 26.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 27, 2012. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 8, 9.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).

Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age,

education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

We note that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely

4

difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

In the present case, Plaintiff has been diagnosed with a number of mental impairments including bipolar I disorder, major depressive disorder, panic disorder with agoraphobia, and PTSD. Medical records document at least four hospitalizations[3] for suicidal ideations and/or suicide attempts. Tr. 317-318, 322-327, 451-460, 668-679, 746-748. From December 4, 2001, until November 2008, Plaintiff was treated at Ozark Counseling for bipolar I disorder, severe depression with psychotic features, generalized anxiety disorder, PTSD, and panic disorder with agoraphobia. Tr. 536-653. Her symptoms included hallucinations, depression, fatigue, anxiety, insomnia, and panic attacks.

Beginning in January 2009, Plaintiff received treatment from Dr. Adam Brazas at Health Resources of Arkansas ("HRA"). Tr. 399-411, 424-425, 516, 674-683, 716-717. And, in April 2012, she spent approximately 42 days in OMART Rehabilitation Center due to her addiction to methamphetamine and marijuana. Dr. Brazas continued to treat her throughout this time.

In May 2010, while still at OMART, Dr. Nancy Bunting, a consultative examiner diagnosed Plaintiff with methamphetamine and prescription drug abuse in remission in a controlled environment.

---

[3]Plaintiff was hospitalized for seven days in October 2005 for a schizophrenia exacerbation, following the death of her son. Tr. 746-748. On August 10, 2009, Plaintiff was hospitalized following an intentional overdose of Risperdal and Clonazepam. Tr. 317-318, 322-397. On March 5, 2010, Plaintiff was again hospitalized due to depression and suicidal ideations. Tr. 442-444, 674-683. And, on April 10, 2010, Plaintiff was readmitted for four days due to suicidal ideation. Tr. 442-450.

Tr. 469-474. She dismissed Plaintiff's diagnosis of bipolar disorder, due to her drug use, and ruled out PTSD. Dr. Bunting concluded that Plaintiff's effort was minimal, reluctant, and superficial, and that she was unreliable and evasive.

In October 2010, Plaintiff reported to Dr. Brazas that she had last used methamphetamine six months prior. Tr. 522-526, 694-698. Her husband was now in prison for methamphetamine distribution, and Plaintiff was living with her daughter. She continued to report hallucinations, fatigue, and depression. And, Dr. Brazas diagnosed her with bipolar disorder, panic disorder, and PTSD. He prescribed Geodon, Seroquel XR, Neurontin, Trazodone, Vistaril, and Klonopin.

In January 2011,[4] Dr. Brazas wrote a letter indicating that Plaintiff carried diagnoses of bipolar I disorder, panic disorder with agoraphobia, and PTSD, and noted that she was presently prescribed seven psychiatric medications. Tr. 516. Given the seriousness of her diagnoses and the medications prescribed to treat those impairments, he felt there was no way that she could be expected to seek and maintain gainful, competitive, employment. Dr. Brazas opined that her mental condition was fragile, at best. And, because she had struggled with the symptoms of her disorder constantly for most of her life, he did not expect her condition to improve significantly in the next one to three years. Treatment notes through February 2011 reveal Plaintiff continued to struggle with the symptoms of her impairments, requiring frequent medication adjustments.

On July 26, 2011, Dr. Paul Deyoub performed a neuropsychological evaluation of Plaintiff. Tr. 816-834. After one appointment, he concluded that her methamphetamine dependence was material and contributed to her limitations. Dr. Deyoub determined that Plaintiff suffered from BIF and could understand, remember, and carry out simple instructions, get along with people if those relationships were incidental to work performed, communicate and interact in a socially adequate manner, cope with the cognitive demands of only unskilled work-like tasks, and attend and sustain concentration on

---

[4] At this time, Dr. Brazas had been treating Plaintiff for two years.

6

unskilled tasks. He diagnosed her with adjustment disorder with depressed mood, methamphetamine dependence, cannabis dependence, BIF, and antisocial personality disorder.

The ALJ correctly pointed out the record references to Plaintiff's substance abuse, namely marijuana and methamphetamine, and her problems with medication compliance. And, the law is clear in stating that if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535. The burden of proving that alcoholism was not a contributing factor material to the disability determination falls on the Plaintiff. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir.2002) (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000)). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

A thorough review of the record reveals that Plaintiff had ongoing problems with substance abuse, with evidence revealing periods of both sobriety and relapse making it extremely difficult to determine Plaintiff's RFC. However, further complicating the matter is the fact that the evidence does not make clear the connection, if any, between Plaintiff's drug addition/medication noncompliance and her bipolar disorder. We note that bipolar disorder can precipitate substance abuse as a means by which the sufferer tries to alleviate her symptoms. Goodwin & Jamison, *supra,* at 219-25; Li-Tzy Wu et al., "Influence of Comorbid Alcohol and Psychiatric Disorders on Utilization of Mental Health Services in the National Comorbidity Survey," 156 *Am. J. Psychiatry* 1235 (1999); Edward J. Khantzian, "The Self-Medication Hypothesis of Addictive Disorders: Focus on Heroin and Cocaine Dependence," 142 *Am. J. Psychiatry* 1259, 1263 (1985). At least one major study has shown that "more than forty-two percent of patients meeting the criteria for a major depressive disorder (including bipolar disorder) had lifetime histories of substance abuse." *See* Kim S. Griswold and Linda F. Pessar, *Management of Bipolar Disorder,* 62 AM. FAMILY PHYSICIAN 1343, 1345 (2000). And, it is not uncommon for patients suffering

7

from bipolar disorder and/or schizophrenia to discontinue their medications at will. *See* DSM IV-TR 304, 321, 359; Charolette E. Grayson, *Bipolar Disorder: Taking Your Bipolar Medication*, *at* www.webmd.com; Agnes Hatfield, *Medication Non-Compliance*, *at* www.schizophrenia.com. According to the DSM, patients suffering from schizophrenia, schizoaffective disorder, and bipolar disorder also suffer from anosognosia, or poor insight. DSM IV-TR 304, 321, 359 (4th ed. 2000). "Evidence suggests that poor insight is a manifestation of the illness, rather than a coping strategy. . . . This symptom predisposes the individual to noncompliance with treatment and has been found to be predictive of higher relapse rates, increased number of involuntary hospital admissions, poorer psychosocial functioning, and a poorer course of illness." *Id*. As such, we believe that the record requires further development in this regard.

      The ALJ's dismissal of Dr. Brazas' assessment is also of concern. He dismissed the doctor's assessment, reasoning that "findings of 'cannot work,' 'is disabled' or 'is unemployable' by a treating doctor is not given controlling weight or given special significance as the determination of disability under the Social Security Act is reserved to the Commissioner (SSR96-5R)." While we agree that the determination as to whether a Plaintiff is disabled is a matter reserved for the ALJ, we believe that ALJ should have submitted an RFC assessment to Dr. Brazas requesting further information concerning Plaintiff's mental limitations. Social Security Ruling 96 - 5p ("Adjudicators are generally required to request that acceptable medical sources provide [medical source] statements with their medical reports."). Dr. Brazas had been Plaintiff's treating psychologist for two years. 20 C.F.R. § 404.1527(c)(2) (Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding). He was well aware of Plaintiff's history of and ongoing problems with both drugs and medication compliance yet, in spite of this knowledge, voiced his belief that Plaintiff was disabled. At the very least, we believe that the ALJ should have recontacted Dr. Brazas to obtain his reasons for concluding that Plaintiff was disabled.

8

Accordingly, we believe that remand is necessary to allow the ALJ to develop the record in this regard, and to obtain an RFC assessment from Dr. Brazas. On remand, Dr. Brazas should also be asked to explain the connection, if any, between Plaintiff's bipolar disorder and her drug use/noncompliance, and to render an opinion as to Plaintiff's ability to perform work related tasks.

IV.     Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of April 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE